UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------X

UNITED STATES OF AMERICA,


    - against -
                                        **MEMORANDUM & ORDER**

DERRICK DIAZ,                           No. 10-cr-00277 (KAM)

            Defendant.


----------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

        Derrick Diaz is serving a 240-month prison sentence after
pleading guilty to Hobbs Act robbery conspiracy in violation of 18
U.S.C. § 1951(a). (*See* ECF No. 253, Judgment at 1-2.) Mr. Diaz
initially moved *pro se*, and then with counsel, for a sentence
reduction or compassionate release under 18 U.S.C. §
3582(c)(1)(A).[1] (ECF No. 307, Def. Mot.) Based on the factors in
18 U.S.C. § 3553(a), and because Mr. Diaz does not show
extraordinary and compelling reasons for sentence reduction, the
Court respectfully denies Mr. Diaz's motion.[2]

<u>**Background**</u>

**I. Factual Background**

_____

[1] As discussed below, in supplemental briefs in support of his motion, Mr. Diaz
is represented by counsel.
[2] Mr. Diaz also sought appoint of counsel to assist him in pursuing his motion.
(*See* ECF No. 307, Def. Mot. at 1.) This Court granted Mr. Diaz's motion to
appoint counsel. (*See* October 13, 2023 Order.)

Between December 2007 and January 2010, Mr. Diaz and other defendants participated in several burglaries and home invasion robberies in Brooklyn. (ECF No. 97, Fourth Sup. Indict.; ECF No. 310, Gov't Response at 1.) Mr. Diaz allegedly organized or led the robberies underlying the conspiracy. (ECF No. 310, Gov't Response at 2.) Mr. Diaz allegedly used weapons, including firearms, screw drivers, and a chisel, during several robberies, and he also menaced victims, including several minors; held one victim at knifepoint; and stabbed another victim. (*Id.*)

## II. Procedural Background

On July 14, 2011, the government filed a fourth superseding indictment: Count One charged Mr. Diaz with Hobbs Act robbery conspiracy in violation of 18 U.S.C. § 1951(a). (ECF No. 97, Fourth Sup. Indict. ¶ 1.)  On February 10, 2012, Mr. Diaz pleaded guilty to Count One. (ECF No. 186, Crim. Cause for Pleading.)

On November 18, 2013, this Court sentenced Mr. Diaz to the statutory maximum of 240 months' imprisonment. (ECF No. 252, Crim. Cause for Sentencing.) At sentencing, the Court calculated a total offense level of 34 and a Criminal History Category of VI, in part from Mr. Diaz's Career Offender status under the United States Sentencing Guidelines ("U.S.S.G.") § 4B1.1(a). (ECF No. 310, Gov't Response at 3.) The Court computed a Guidelines range of 262 to 327 months, with an effective Guideline range of 240 months based

2

on the applicable twenty-year statutory maximum. (ECF No. 310, Gov't Response, Ex. 1, Sentencing Tr. at 34:22-35:1.)[3]

On May 16, 2022, Mr. Diaz moved *pro se* for sentence reduction or compassionate release and for an appointment of counsel. (ECF No. 307, Def. Mot.) On June 10, 2022, the government responded in opposition. (ECF No. 310, Gov't Response.) On September 28, 2022, the Court ordered the appointment of CJA Zachary Taylor as counsel for Mr. Diaz. (ECF No. 313.) On September 30, 2022, the Court ordered Mr. Diaz's counsel to "file any supplement" to Mr. Diaz's original motion and on October 18, 2022, directed both parties to address recent case law in supplemental briefing. On December 23, 2022, Mr. Diaz's counsel filed a supplemental letter in support of Mr. Diaz's original motion. (ECF No. 320, Def. First Supplemental Ltr.) Mr. Diaz's counsel also filed an affidavit from Mr. Diaz's mother, Evelyn Denny, stating her need for Mr. Diaz as her caretaker. On January 5, 2023, the government filed its supplemental response. (ECF No. 323, Gov't First Supplemental Ltr.) On October 13, 2023, following the CJA appointment of new counsel for Mr. Diaz, see ECF No. 324, this Court ordered that counsel for Mr. Diaz may file a supplement to the motion, and the government shall respond to the motion. After the appointment of new counsel, Mr. Diaz purportedly spoke with his prior counsel,

---

[3] The Court cites to the Bates-stamped pages of Ex. 1.

Mr. Taylor, and expressed his desire for Mr. Taylor to continue representing him. (*See* ECF No. 325, Taylor Ltr.) On December 14, 2023, Mr. Taylor filed a second supplemental letter in support of Mr. Diaz's motion. (ECF No. 326, Def. Second Supplemental Ltr.) On January 22, 2024, the government filed its second supplemental response opposing Mr. Diaz's motion. (ECF No. 328, Gov't. Second Supplemental Ltr.)

## Legal Standard

The federal compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), creates an exception to the general rule that a court may not modify a term of imprisonment after it has been imposed. To be eligible for compassionate release, a defendant must (1) exhaust his or her administrative remedies by requesting compassionate release from prison authorities, (2) show "extraordinary and compelling reasons" for a sentence reduction, and (3) show that the reduction accords with the sentencing factors in 18 U.S.C. § 3553(a). *See United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2021); *see also United States v. Vasquez*, No. 96-CR-1044 (HG), 2024 WL 2385264, at *2 (E.D.N.Y. May 23, 2024) (noting that "18 U.S.C. § 3582(c)(1)(A)(i) provides that, once a defendant has 'fully exhausted all administrative rights,' the court may reduce his sentence, 'after considering the factors set forth in [28 U.S.C. §] [sic] 3553(a)' if it finds that 'extraordinary and compelling reasons warrant such a reduction,' and that 'such a

reduction is consistent with applicable policy statements issued by the Sentencing Commission'"").

**Discussion**

**I. Exhaustion**

A defendant may move for a sentence reduction after the earlier of (1) exhausting all administrative rights to appeal a failure by the Bureau of Prisons to file a motion on the defendant's behalf or (2) the lapse of thirty days from the warden's receipt of any such request. *See* 18 U.S.C. § 3582(c)(1)(A). The exhaustion requirement is not a jurisdictional limitation. *See United States v. Saladino*, 7 F.4th 120, 121 (2d Cir. 2021). If the government does not raise an exhaustion defense, the court may consider the merits of the defendant's motion. *See United States v. Beckett*, No. 20-cr-213 (KAM), 2022 WL 2819075, at *3 (E.D.N.Y. July 19, 2022).

Mr. Diaz asserts that he satisfied the exhaustion requirement. He attaches two written requests for relief under 18 U.S.C. § 3582(c)(1)(A). (*See* ECF No. 307, Def. Mot.) On October 29, 2020, Mr. Diaz requested a sentence reduction or compassionate release while at USP Lewisburg due to his "'care-giver' status to [his] ailing/disabled Mother[.]" (*Id.* at 8.) The form includes a stamp that says "RECEIVED" on October 30, 2020, by the "Admin Remedy Clerk" of USP Lewisburg. (*Id.*) On this form, the portion purportedly designated for the Warden or Regional Director's

response is blank. (*See id.*) On January 20, 2020, Mr. Diaz requested Warden R.M. Wolfe to initiate a motion under § 3582(c)(1)(A)(i), noting he "was erroneously classified an offender pursuant to the Career Offender guideline." (*Id.* at 7.) Mr. Diaz does not include a response by the Warden to his request, nor does he expressly include in his motion that he did not receive responses.

The Court need not decide whether Mr. Diaz did in fact exhaust his administrative remedies. The government discusses Mr. Diaz's exhaustion of his administrative remedies only to acknowledge that "[i]t is not clear from the defendant's application whether he has exhausted his administrative remedies. If Warden Wolfe did not respond to the defendant's January 20, 2022 request for compassionate release…the government agrees the defendant exhausted his administrative remedies." (ECF No. 310, Gov't Response at 3 n.2.) However, the government does not expressly raise an exhaustion defense in opposition and notes that "[r]egardless [whether Warden Wolfe responded to Mr. Diaz]…his application should be denied." (*Id.*) The government then directs its opposition entirely at whether Mr. Diaz states extraordinary and compelling reasons and whether § 3553(a) factors militate against his early release. (*Id.* at 3-7.) Accordingly, the Court "is now free to consider the merits of [Mr. Diaz's] motion." *Beckett*, 2022 WL 2819075, at *3 (quoting *Saladino*, 7 F.4th at 123).

## II. Extraordinary and Compelling Reasons

In his motion, Mr. Diaz raises two main points supporting his request under 18 U.S.C. § 3582(c)(1)(A): first, he argues that his "Career Offender" status is no longer valid because his instant offense is no longer a "Crime of Violence"; second, he argues that his mother's health requires his release to serve as her primary caregiver. (ECF No. 307, Def. Mot. at 2-5.) Mr. Diaz's later submissions briefly raise additional arguments regarding his state burglary convictions, his rehabilitation efforts, and hardships from incarceration during the COVID-19 pandemic. Further, Mr. Diaz's later submissions note that due to recent amendments to the Sentencing Guidelines, he no longer asserts his "crime of violence" argument. For completeness, the Court nonetheless reviews the arguments. In sum, the Court finds that Mr. Diaz does not demonstrate the requisite extraordinary and compelling reasons.

### A. Mr. Diaz's Career Offender Status

The crux of Mr. Diaz's first point is that were he sentenced today, he would not be a Career Offender under the Sentencing Guidelines.[4] Mr. Diaz first argued that Hobbs Act robbery

---

[4] The Guidelines definition of a Career Offender is the same today as it was in 2013, at the time of Mr. Diaz's sentencing: "A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a).

conspiracy[5] was no longer considered a crime of violence, and that "one or more of his predicates no longer qualify as such under the Criminal Career Guideline." (*Id.* at 1-3.)

In his *pro se* motion, Mr. Diaz does not cite specific case law. The government's response identified but distinguished Second Circuit case law, *United States v. Barrett*, 937 F.3d 126 (2d Cir. 2019), *abrogated on other grounds by  Lora v. United States*, 599 U.S. 453 (2023), that found "Hobbs Act conspiracy is not a 'crime of violence' within the meaning of [18 U.S.C.] § 924(c)," such that "a defendant could not be convicted of using a firearm in furtherance of a 'crime of violence' under § 924(c) where the underlying crime is Hobbs Act conspiracy, as opposed to substantive Hobbs Act robbery." (ECF No. 310, Gov't Response at 3-4.) *Barrett* is inapposite, the government argued, because this Court relied on the advisory Guidelines' definition of a crime of violence in § 4B1.2(a) in determining Mr. Diaz's Career Offender status—not based on § 924(c) or any other statute. (*Id.* at 4.)

*Barrett* discussed whether Hobbs Act robbery was a crime of violence in context of § 924(c); in turn, the Second Circuit ruled in 2022 in *United States v. Chappelle* that Hobbs Act robbery is

---

[5]  Mr. Diaz's original motion erroneously noted that Hobbs Act *robbery* was no longer a crime of violence. (ECF No. 307, Def. Mot. at 2.) This Court understands his *pro se* motion to refer to Hobbs Act robbery conspiracy, the only count to which Mr. Diaz pleaded guilty. (ECF No. 97, Fourth Sup. Indict. at 1; ECF No. 253, Judgment at 1.) The government's responses similarly acknowledge that Mr. Diaz's arguments refer to Hobbs Act robbery conspiracy. (*See, e.g.*, ECF No. 310. Gov't Response at 4 n.3.)

not categorically a "crime of violence" under the Guidelines §
4B1.2(a) because "Hobbs Act robbery can be committed based solely
on violence against property, whereas a 'crime of violence' under
§ 4B1.2 must be based on violence against people." 41 F.4th 102,
104 (2d Cir. 2022). In turn, the Second Circuit held that "if the
object of the conspiracy is not a crime of violence, then the
conspiracy itself cannot be one either." *Id.* at 105.

Accordingly, the government's first supplemental letter
conceded that *Chappelle* "would foreclose [Mr. Diaz's] designation
as a career offender under the Guidelines because his offense of
conviction, Hobbs Act conspiracy, is no longer considered a
predicate offense for the application of this designation." (ECF
No. 323, Gov't First Supplemental Ltr. at 5.) Nevertheless, the
government argued that the change in law in *Chappelle* was not an
extraordinary and compelling reason because even if Mr. Diaz were
not a Career Offender, his Guidelines range would be 235 to 293
months, with an effective range of 235 to 240 months—and yet,
"nothing in the original sentencing record [] suggest[s] the
defendant would receive a lesser sentence" than 240 months, which
would have been at the "very low end" of such advisory range. (*Id.*
at 5-6.)

In November 2023, however, the Sentencing Commission issued
a series of amendments. Relevant to Mr. Diaz's Career Offender
argument, the Commission amended parts of § 4B1.2—the Guidelines

section defining terms used to assess § 4B1.1(a)'s Career Offender designation—in a manner that designates Hobbs Act robbery a crime of violence. *See* U.S.S.G. Amendment 822. The Commission defined robbery, one of the predicate offenses for a "crime of violence," to include offenses based on force or threats of force against a person or property. *See* § 4B1.2(e)(3). It also explicitly included inchoate offenses in the definition at § 4B1.2(d), including conspiring to commit a defined crime of violence. *See* U.S.S.G. Amendment 822. Section 3582(c)(1)(A) specifically notes that a reduction under the statute must be "consistent with applicable policy statements issued by the Sentencing Commission[.]"

Recognizing this oscillation, Mr. Diaz notes that "while Hobbs Act conspiracy would not have been deemed a 'crime of violence' for the approximately 15-month period between July 21, 2022 and November 1, 2023, it is currently a crime of violence under the recent amendment to the guidelines." (ECF No. 326, Def. Second Supplemental Ltr. at 4-5.) Therefore, Mr. Diaz's argument related to his Career Offender designation, based on whether Hobbs Act robbery conspiracy is a "crime of violence," is moot.

In his most recent letter, Mr. Diaz's counsel raises a new argument that, notwithstanding the Amendment defining Hobbs Act robbery conspiracy as a crime of violence under the Guidelines, Mr. Diaz still "would not be deemed a career offender if sentenced today" because "under the Sentencing Commission's August 1, 2016

10

amendment of the career offender guideline, Mr. Diaz's prior state burglary convictions are not 'crimes of violence' within the meaning of U.S.S.G. § 4B1.2." (*Id.* at 1 n.1. (citing U.S.S.G Manual 2023: Supplement to Appendix C at 119-25 (Amendment 798)).)

The Court need not reach this argument. Even if Mr. Diaz's counsel were correct, another November 2023 Guidelines amendment stands in Mr. Diaz's way, which his counsel concedes. In November 2023, the Sentencing Commission also amended the Guidelines to clarify what constitutes "extraordinary and compelling reasons" under § 1B1.13. *See* U.S.S.G. Amendment 814. This "amended guidance as to what constitutes extraordinary and compelling reasons now controls a court's analysis of a defendant- or BOP-initiated petition for compassionate release." *United States, v. Messina*, No. 11-CR-31 (KAM), 2024 WL 2853119, at *3 (E.D.N.Y. June 4, 2024) (internal quotation omitted).

Specifically relevant are two subsections of the Guidelines that discuss changes in law: § 1B1.13(b)(6) states:

> "If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but *only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances*." (emphasis added.)

11

In turn, § 1B1.13(c) states:

> "Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction."

Subsection (b)(6) is inapplicable to Mr. Diaz. At most, removing his Career Offender status lowers his Criminal History score from VI to V, denoting an effective Guidelines range of 235- to 240-months' incarceration. Mr. Diaz is currently serving a 240-month sentence—exactly within the effective Guideline range he argues would result from the change from Amendment 798, which cannot reasonably be described as "produc[ing] a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." § 1B1.13(b)(6). Accordingly, subsection (c) is also inapplicable, because (b)(6) does not apply, and, as discussed below, Mr. Diaz does not "otherwise establish[] extraordinary and compelling reasons warrant[ing] a sentence reduction under this policy statement." § 1B1.13(c). Indeed, citing subsection (c) in his latest submission, Mr. Diaz notes that he "no longer asserts that" the change in the law around his Career Offender status "establishes extraordinary

and compelling reasons for a reduction of his sentence[.]" (ECF No. 326, Def. Second Supplemental Ltr. at 1 n.1.)[6] Therefore, his argument as to his Career Offender status, based on Amendment 798, is moot.

Accordingly, Mr. Diaz presents no extraordinary and compelling reason warranting a sentence reduction related to his status as a Career Offender.

B. Mr. Diaz's Remaining Arguments for Sentence Reduction

Mr. Diaz's remaining arguments rest on his mother's health, his purported rehabilitation, and the difficulty of his incarceration during the COVID-19 pandemic. Per § 1B1.13(b)(5), Mr. Diaz may present circumstances "similar in gravity" to those enumerated in § 1B1.13(b)(1)-(4), and such circumstances may be "considered by themselves or together with any of the reasons described in" (b)(1) to (4) to show extraordinary and compelling reasons. *See also Messina*, No. 11-CR-31 (KAM), 2024 WL 2853119, at *3 (describing § 1B1.13(b)(5) as a "catch-all" provision). However, Mr. Diaz's remaining arguments, even together, fail to show extraordinary and compelling reasons sufficient to warrant a sentence reduction.

---

[6] Again citing § 1B1.13(c), Mr. Diaz explicitly notes that he "would not be deemed a career offender under the current guidelines. Consequently, his effective guidelines range if he were sentenced today would be 235 to 240 months. *This change in the guidelines is not an extraordinary and compelling reason for a sentence reduction. See* U.S.S.G. § 1B1.13(c)." (ECF No. 326, Def. Second Supplemental Ltr. at 7 (emphasis added).)

1. Family Circumstances Pertaining to His Mother's Health

Mr. Diaz seeks a sentence reduction in part due to his mother's "severe physical limitations[.]" (ECF No. 326, Def. Second Supplemental Ltr at 6.) In his latest submission,[7] Mr. Diaz relies on § 1B1.13(b)(3)(C), providing that "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent" can be an extraordinary and compelling reason that justifies compassionate release. (*Id.*)

The Court sympathizes with Mr. Diaz's family circumstances but finds that Mr. Diaz has not met his burden to show that his mother is incapacitated and that he is her only available caregiver. *See Beckett*, 2022 WL 2819075, at *2 ("The defendant carries the burden of showing that he ... is entitled to a sentence reduction under" §3582(c)(1)(A) (internal citation omitted)).

First, Mr. Diaz has not met his burden to show his mother's incapacitation. Ms. Denny's affidavit alone, without corresponding medical documentation of her incapacitation, is insufficient. *See, e.g.*, *United States v. Romano*, No. 22-CR-12 (KAM), 2023 WL 8735203, at *3 (E.D.N.Y. Dec. 19, 2023) (finding the defendant did not meet his burden to show his father's incapacitation where he did "not provide any of his father's medical records or a medical note from

---

[7] The current language in § 1B1.13(b)(3)(C) comes from the November 2023 U.S.S.G. Amendment 814.

a treating physician to establish his incapacitation"); *United States v. Peeler*, No. 3:99-CR-00067-MPS-2, 2024 WL 1636710, at *2 (D. Conn. Apr. 16, 2024) (appealed on May 8, 2024) (finding the defendant did not meet his burden to show incapacitation where the record, *inter alia*, was "[m]issing [] a medical opinion concerning [his father's] ability to function or care for himself or a recommendation or referral for personal or home health care assistance").

Further, Mr. Diaz describes his mother as "living on her own, and mostly home bound due to poor health and severe physical limitations" but notes that he does not intend to reside with her, but rather "near" her in Manchester, New Hampshire, where she lives. (ECF No. 320, Def. First Supplemental Ltr. at 3.) Ms. Denny has stated that she lives "in a rented room in a private house," and this Court appreciates that increased space may be cost-prohibitive. (ECF No. 321, Denny Aff. ¶ 2.) However, on balance, Mr. Diaz does not show incapacitation by stating that his mother lives alone, is "mostly" home bound, and he only intends to live "near" her, without any supporting "medical records or a medical note…establish[ing her] incapacitation." *Romano*, No. 22-CR-12 (KAM), 2023 WL 8735203, at *3; *see also Peeler*, No. 3:99-CR-00067-MPS-2, 2024 WL 1636710, at *3 (finding it "not a description of immobility or inability to care for oneself" when defendant pleaded that "his father's condition 'make[s] it extremely difficult for

him to walk for extended periods of time and complete mundane tasks that we might normally take for granted,'" and further noting that defendant's father "liv[ing] alone without home health assistance and participat[ing] in activities outside the home suggests that he is currently able to care for himself").

Second, Ms. Denny's affidavit itself does not support Mr. Diaz's argument that Ms. Denny is incapacitated. Again, Ms. Denny explicitly notes that she "live[s] on [her] own[.]" (ECF No. 321, Denny Aff. ¶ 2.) Although she "avoid[s]" making medical appointments because of difficulty navigating stairs and the curb by herself, and that she is "essentially a prisoner" in her room, she also acknowledges that she has access to a "service" that "will drive [her] to [her medical] appointments[.]" (*Id.* ¶¶ 5-6.)

The Court sincerely sympathizes with Ms. Denny's medical difficulties, including that she is in great pain; but without, for example, "medical records or a medical note from a treating physician to establish [her] incapacitation," *Romano*, No. 22-CR-12 (KAM), 2023 WL 8735203, at *3; "a medical opinion concerning [her] ability to function or care for" herself, *Peeler*, No. 3:99-CR-00067-MPS-2, 2024 WL 1636710, at *2; or "a recommendation or referral for personal or home health care assistance," *id.*, to assist the Court in factual findings, the record is insufficient to establish Ms. Denny's incapacitation.

Further, Mr. Diaz has similarly failed to meet his burden to show that he is Ms. Denny's only available caregiver. Although Ms. Denny's affidavit states that "no other caregiver" is available, neither Ms. Denny's affidavit nor Mr. Diaz sufficiently explains why non-relatives or relatives, even if they do not currently "live near" her, are unavailable caretakers.[8] (ECF No. 321, Denny Aff. ¶ 2); *see Romano*, No. 22-CR-12 (KAM), 2023 WL 8735203, at *3 (faulting defendant for "not explain[ing] 'whether household members, friends in the community, or relatives other than his siblings,' mother, and nephew 'would have the time, money, and resources to help' his father" (quoting *United States v. Nishida*, No. 19-cr-25 (SOM), 2023 WL 7222875, at *3 (D. Haw. Nov. 2, 2023)).

Accordingly, the Court does not find that Ms. Denny's medical situation is an extraordinary and compelling reason warranting reducing Mr. Diaz's sentence under § 1B1.13(b)(3)(C). *See Peeler*, No. 3:99-CR-00067-MPS-2, 2024 WL 1636710, at *2 ("Many, if not all inmates, have aging and sick parents. Such circumstance is not extraordinary." (quoting *United States v. Ingram*, 2019 WL 3162305 *2 (S.D. Ohio Jul. 16, 2019)).

---

[8] The Presentence Investigation Report ("PSR"), dated July 27, 2012, reported that Mr. Diaz has three adult siblings, one of whom lived in Manchester, New Hampshire, the same city as Ms. Denny. (PSR ¶ 123.)

2. Mr. Diaz's Rehabilitation and COVID-19 Arguments

Mr. Diaz's remaining arguments center on (1) the difficult conditions of his incarceration during the COVID-19 pandemic, and (2) evidence of his rehabilitation while incarcerated.

First, the Court is sympathetic to the difficulties that Mr. Diaz and all inmates faced while incarcerated during the height of the COVID-19 pandemic and understands that many of these difficulties continue. (*See* ECF No. 320, Def. First Supplemental Ltr. at 4; ECF No. 326, Def. Second Supplemental Ltr. at 7.) However, "the risk [of COVID-19] does not, on its own without a showing of a heightened risk due to a co-morbidity and other factors, constitute an 'extraordinary and compelling reason[]' to modify a prison sentence." *United States v. Phileston*, No. 19-CR-397 (KAM), 2021 WL 1254542, at *3 (E.D.N.Y. Apr. 5, 2021) (collecting cases). Here, Mr. Diaz alleges no medical circumstance that may reasonably fall under any portion of applicable § 1B1.13(b)(1) regarding extraordinary and compelling reasons based on a defendant's medical circumstances. Mr. Diaz's incarceration experience during the pandemic appears to mirror other incarcerated individuals' shared experiences: certainly no less difficult, but for the purposes of sentence reduction, falling short of extraordinary and compelling. *See Phileston*, No. 19-CR-397 (KAM), 2021 WL 1254542, at *3; *see also United States v. Veliu*, No. 17-CR-404-1 (KAM), 2022 WL 2484240, at *5 (E.D.N.Y. July 6,

2022) ("[T]he conditions of confinement during the pandemic [do
not] give rise to extraordinary and compelling circumstances.
Although the Court acknowledges that 'the pandemic has made prison
conditions harsher than usual, those are circumstances that all
inmates have had to endure. While the Court does not minimize those
difficulties, they do not rise to the level of extraordinary and
compelling.'" (quoting *United States v. Johnson*, No. 18-cr-
907(PAC), 2021 WL 4120536, at *3 (S.D.N.Y. Sept. 9, 2021)).

Mr. Diaz's only remaining argument centers on his
rehabilitation. The Court certainly commends Mr. Diaz's clear
self-improvement during his incarceration, including payment of
$1,374.57 towards his restitution obligation and the $100.00 for
the special assessment, which the Court encourages him to continue
to pay; however, the Court cannot consider rehabilitation as a
sole factor in sentence reduction. *See* 28 U.S.C. § 994(t)
("Rehabilitation of the defendant alone shall not be considered an
extraordinary and compelling reason."); *see also* § 1B1.13(d)
("Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant
is not, by itself, an extraordinary and compelling reason for
purposes of this policy statement."). Though courts may consider
rehabilitation "in combination with other circumstances in
determining whether and to what extent a reduction in the
defendant's term of imprisonment is warranted," this Court does

not find Mr. Diaz to have presented other extraordinary and compelling reasons. § 1B1.13(d).

Accordingly, Mr. Diaz presents no extraordinary and compelling reason warranting a sentence reduction related to his mother's health, the pandemic, or his rehabilitation.

### III. Application of § 3553(a) Sentencing Factors

Even if Mr. Diaz had presented extraordinary and compelling reasons, the Court still finds the § 3553(a) sentencing factors do not favor relief. *See United States v. Jones*, 17 F.4th 371, 374 (2d Cir. 2021) ("[E]xtraordinary and compelling reasons are necessary-but not sufficient-for a defendant to obtain relief under § 3582(c)(1)(A)."). These sentencing factors include (1) the nature and circumstances of the offense and defendant's history and characteristics; (2) the need for the sentence to, *inter alia*, reflect the seriousness of the offense, promote respect for the law, and otherwise accomplish the aims of the criminal justice system; (3) the kinds of sentences available; (4) the advisory guidelines sentence range; (5) pertinent Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities among similarly situated defendants, and (7) the need to provide restitution to victims. *See* 18 U.S.C. § 3553(a).

The relevant factors weigh against reducing Mr. Diaz's sentence. As noted above, even with a Criminal History of V, Mr. Diaz's 240-month sentence would fall within the resulting advisory

range of 235-293 months and the effective Guidelines range of 235-240 months. Indeed, this Court sentenced Mr. Diaz to the statutory maximum of 240 months based on the very serious nature and violent circumstances of his offense. In considering the § 3553(a) factors at sentencing, the Court stressed that "Mr. Diaz play[ed] a major role in three violent home invasion robberies" where, for example, "he and his co-conspirators used screwdrivers and sharp cutting implements to force their way in the home, threaten[ed] two young children and their caregiver and rob[bed] the three residents" who were "kept [] captive in the bathroom." (ECF No. 310, Gov't Response, Ex. 1, Sent. Tr. at 37:13-19). In another robbery, Mr. Diaz encountered the victim's elderly mother, and he and a co-defendant "threatened her with a gun and a realistic looking BB gun," after which they "ripped apart her coat and attempted to tie her." (*Id.* at 38:4-6, 10-11.) In yet another robbery, Mr. Diaz "entered the home armed with a knife and stabbed the intended victim." (*Id.* at 38:18-20.) The Court also considered then, as it does now, that Mr. Diaz "played a mayor [sic] role in many other robberies between 2007 and 2010." (*Id.* at 38:23-25.) During one such robbery, Mr. Diaz "bound two teenage victims, one who had just emerged from the shower," "used a handgun to threaten them, as well as a third adult victim," "sexually exposed and threatened the teenage girl," and also "pistol whipped with a gun" the teenage

girl's father in front of her as he "begg[ed] for his life." (*Id.* at 39:10-18.)

The Court is highly encouraged by Mr. Diaz's representations that he has been working toward rehabilitating himself during his incarceration and further appreciates that his submission is clear and thoughtful. However, the Court's consideration of the § 3553(a) sentencing factors still warrant the respectful denial of Mr. Diaz's motion.

## Conclusion

For the reasons stated above, the Court respectfully denies Mr. Diaz's motion for compassionate release.

**SO ORDERED.**

Dated:      June 27, 2024
            Brooklyn, New York

_____
KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York